UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JESSE BOONE JACOBS,

    Plaintiff,

v.                                           Case No. 3:22cv7595-LC-HTC

ESCAMBIA COUNTY,

    Defendant.
_____/

REPORT AND RECOMMENDATION

Before the Court are Defendant's motion to dismiss for failure to state a claim, ECF Doc. 33, and motion to dismiss as a sanction, ECF Doc. 42. Despite being given ample opportunity to respond, Plaintiff has failed to do so.[1] After reviewing the parties' submissions and the relevant law, the undersigned concludes Defendant's motion to dismiss for failure to state a claim should be granted, as

---

[1] Defendant filed the first motion to dismiss on February 1, 2023, and the second motion on April 6, 2023. Although Plaintiff recently moved for the appointment of counsel, asserting he is unable to collect evidence, ECF Doc. 49, the Court previously advised him that he is not required to submit evidence in response to a motion to dismiss for failure to state a claim, ECF Doc. 41, and the Court could not indefinitely extend response deadlines in the hope he would one day receive his property from his previous place of confinement, ECF Doc. 46. Also, under Local Rule 7.1(H), the Court may grant a motion to dismiss by default.

Plaintiff has not alleged facts which plausibly suggest Defendant had a policy or custom which caused a violation of his constitutional rights.[2]

## I. Background

Plaintiff Jesse Boone Jacobs, proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint against Defendant Escambia County under 42 U.S.C. § 1983 relating to his pretrial detention at the Escambia County Jail. ECF Doc. 19. The complaint sets forth the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

Plaintiff arrived at the Escambia County Jail on August 24, 2020, "with an illegal and unconstitutionally high bail" of 2.1 million dollars.[3] For about a year, he "was made to sleep on a concrete floor with a thin mat in a cell with two other inmates using about 50 [square] feet of living space." Plaintiff "developed physical injuries from [his] prolonged time sleeping on the concrete," including "a hernia in [his] belly button area," "about 12 lumps on both of [his] arms, and very severe right neck, shoulder, and back pain that makes [his] arm go numb" when he sits or lays down.

---

[2] In the motion for sanctions, Defendant alleges Plaintiff submitted a fraudulent affidavit purportedly signed by a Jail employee, which supported Plaintiff's alleged inability to file a grievance. Because the undersigned concludes Plaintiff has failed to state a claim, Defendant's motion to dismiss as a sanction will not be addressed.

[3] The undersigned does not read the complaint as bringing an independent excessive bail claim, as Plaintiff does not allege the Defendant had any responsibility for the amount of his bail.

On May 26, 2021, Plaintiff messaged health services about his hernia; they instructed Plaintiff not to "put sick call issues on the kiosk" and instead to submit a paper sick call slip.  Plaintiff submitted multiple paper sick calls, some of which were not returned.  Regarding the hernia, medical personnel advised Plaintiff not to exercise and gave him pain medication but "would never do more."  Plaintiff was eventually issued an abdominal binder for the hernia on June 24, 2022.  Medical staff "said pinched nerve for [his] neck, back, and arm pain with never bringing [him] to medical to look at it."  On August 5, 2022, Plaintiff submitted a grievance "asking medical to do the right things to address [his] physical injuries developed from prolonged sleeping on a concrete floor[.]"  In response, Plaintiff was advised to submit a paper sick call slip, which he did on August 8.  On August 15, Plaintiff "was brought down to medical to receive x-rays on [his] right shoulder area," but he never received information on the results.

Based on the foregoing, Plaintiff alleges the conditions of confinement at the Jail violated the Fourteenth Amendment.[4]  As relief, he seeks damages.

---

[4] Plaintiff's complaint also references the Fifth and Eighth Amendments, as well as Article I Section 14 of the Florida Constitution.  However, the Fifth Amendment applies only to the federal government; it does not apply to a local entity such as Escambia County.  *See Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government … from depriving any person of life, liberty, or property without due process of law.").  And the Eighth Amendment applies only to convicted prisoners.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (Eighth Amendment's Cruel and Unusual Punishment Clause applies to claims of mistreatment by convicted prisoners).  Lastly, Article I Section 14 of the Florida Constitution addresses only an accused's entitlement to

## II. Legal Standard

To survive a motion to dismiss, a plaintiff must plead factual content which allows the Court to draw the reasonable inference the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must liberally construe a *pro se* plaintiff's allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. Discussion[5]

### A. Conditions of Confinement

"The Eighth Amendment—and therefore the Fourteenth also—is violated when a jailer 'is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury.'" *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)). "To establish a

---

pretrial release; it does not address the conditions of pretrial confinement. Furthermore, Plaintiff has not identified an enabling statute which allows him to pursue a claim for damages under the Florida Constitution. *See Youngblood v. Fla. Dep't of Health*, 224 F. App'x 909, 913 n.4 (11th Cir. 2007) (noting district court correctly dismissed plaintiffs' claims under the Florida Constitution to the extent they sought monetary damages because plaintiffs cited no authority creating a civil cause of action for monetary relief) (citation omitted).

[5] "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted). Thus, the undersigned will reference cases decided under the Eighth Amendment.

deliberate-indifference claim, a plaintiff must make both an objective and a subjective showing. Under the objective component, the plaintiff must demonstrate 'a substantial risk of serious harm.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Under the subjective component, the plaintiff must prove 'the defendants' deliberate indifference' to that risk of harm by making three sub-showings: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" *Id.* (quoting *Lane*, 835 F.3d at 1308).

Here, Plaintiff's allegations do not satisfy the objective component of a conditions-of-confinement claim. Despite Plaintiff's suggestion to the contrary, ECF Doc. 19 at 6, "[d]ouble or triple celling of an inmate does not in and of itself constitute cruel and unusual punishment." *Batts v. Martin*, 825 F.2d 406 (4th Cir. 1987). Instead, the relevant inquiry is whether the overcrowding deprived the inmate "of the minimal civilized measure of life's necessities." *Rhodes v. Chpaman*, 452 U.S. 337, 347 (1981).

Plaintiff does not allege the overcrowding affected the Jail's ability to provide such necessities as food, medical care, and sanitation. *See Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("In assessing claims of unconstitutionally overcrowded jails, courts must consider the impact of the alleged overpopulation on the jail's ability to provide such necessities as food, medical care, and sanitation.")

(citing *Rhodes*, 452 U.S. at 347-48). Nor does he allege he was required to spend all day in the overcrowded cell. *See Bell v. Wolfish*, 441 U.S. 520, 543 (1979) (concluding "double-bunking" did not violate the Constitution when detainees were "required to spend only seven or eight hours each day in their rooms, during most or all of which they presumably are sleeping"). Rather, he alleges only that the overcrowding at the Jail resulted in him sleeping on a mat on the floor for approximately a year.

Although Plaintiff claims his sleeping arrangement caused him a variety of ailments, viewed objectively, requiring an inmate to sleep on a mat on the floor for an extended period does not pose a substantial risk of serious harm. *See Hubbard v. Taylor*, 538 F.3d 229, 234-38 (3d Cir. 2008) (concluding that, based on the totality of circumstances, requiring inmates to sleep on mattresses on the floor for three to seven months was not unconstitutional); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (Inmate "cited no case holding that the Constitution requires elevated beds for prisoners, and we know of no source for such a right."); *Askew v. Fairman*, 880 F. Supp. 557, 562 (N.D. Ill. 1995) (holding inmate alleging he was forced to sleep on cold floor without a mattress for almost a year failed to state a claim because "the conditions, although perhaps unsanitary and uncomfortable, do not deprive plaintiff of the minimal civilized measure of life necessities"). The alleged sleeping arrangement may have been uncomfortable, "[b]ut the Constitution does not

mandate comfortable prisons[.]" *Rhodes*, 452 U.S. at 349; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("extreme deprivations are required to make out a conditions-of-confinement claim"). Thus, Plaintiff's allegations are not sufficient to satisfy the objective component of a conditions-of-confinement claim.

B. **Medical Care**

Like a conditions-of-confinement claim, a deprivation of medical care claim requires a plaintiff to demonstrate deliberate indifference. To prevail on a deprivation of medical care claim, a plaintiff "must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

Here, Plaintiff claims he experienced "a hernia in [his] belly button area," "about 12 lumps on both of [his] arms, and very severe right neck, shoulder, and back pain that makes [his] arm go numb" when he sits or lays down. ECF Doc. 19 at 7-8. However, allegations that Plaintiff had lumps on his arms or suffered from neck and back pain are not sufficient to show those conditions constituted a serious medical need. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (describing a serious medical need as one that, if left unattended, poses a substantial risk of serious harm); *see also Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007)

("lower back pain is not the type of serious condition this circuit requires" to establish a "serious medical need").

Regardless, assuming Plaintiff had a serious medical need, he has not alleged facts indicating the care he received was deliberately indifferent. After Plaintiff informed medical personnel about his hernia, they advised him to avoid exercise and provided him pain medication. Later, he was given an abdominal binder. Medical personnel also diagnosed Plaintiff's back, neck, and arm pain as stemming from a pinched nerve. Plaintiff submitted a grievance and sick call request regarding his "physical injuries," and shortly thereafter an x-ray was taken of his shoulder area.

These allegations lack the detail necessary to show the medical care Plaintiff received violated his constitutional rights. Although Plaintiff vaguely asserts medical personnel "would never do more" and he asked "medical to do the right things to address [his] physical injuries," ECF Doc. 19 at 8, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). "The long and short of it is that diagnosing, monitoring, and managing conditions—even where a complete cure may be available—will often meet the 'minimally adequate medical care' standard that the Eighth Amendment imposes." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1273 (11th Cir. 2020) (quoting

*Harris*, 941 F.2d at 1504). In light of the fact Plaintiff received some medical care—including pain medication, an abdominal binder, and an x-ray—the undersigned concludes Plaintiff's allegations are not sufficient to show that care was constitutionally inadequate.

### C. Municipal Liability

As indicated above, the undersigned concludes neither Plaintiff's sleeping arrangement nor his medical care amounted to a constitutional violation. Nevertheless, assuming Plaintiff had stated a claim, Plaintiff has not alleged facts which would support imposing liability on Escambia County. "A county is liable under § 1983 if one of its 'customs, practices, or policies' was the 'moving force' behind a constitutional injury." *Grochowski v. Clayton Cty.*, 961 F.3d 1311, 1321 (11th Cir. 2020) (citation omitted). "To prevail on such a claim, 'a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [County] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Id.* (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). "A plaintiff … has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted).

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted). "In addition to identifying 'conduct properly attributable to the municipality,' [a plaintiff] must 'show that the municipal action was taken with the requisite degree of culpability,' that is, 'with deliberate indifference to its known or obvious consequences.'" *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 943 (11th Cir. 2017) (quoting *Davis v. DeKalb Cty. Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)).

Plaintiff's complaint does not establish the practice of having inmates sleep on the floor was widespread.[6] Plaintiff describes only his own experience at the Jail and that he observed "inmates placed in a triple cell assignment for 24 [hours] without a mat before." These allegations do not show inmates were required to sleep

---

[6] Plaintiff's allegations regarding the County's responsibility for the conditions at the Jail are largely conclusory. For example, he alleges: (1) "It is obvious [the County's] actions are widespread and have been going on the whole time I have been here and still continue."; (2) "I do not know how long this custom, policy and/or practice has been going on for before my arrival but it is the moving force behind the constitutional deprivation and is so settled and permanent that it takes on the force of law."; and (3) "It would be a lack of good judgment even senseless to say [the County] did not know the obvious consequences of their unconstitutional conduct." ECF Doc. 19 at 6-7. The Supreme Court has instructed lower courts to disregard such conclusory allegations when considering a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

Case No. 3:22cv7595-LC-HTC

on the floor for extended periods of time so frequently that it was a "custom" or a "practice that is so settled and permanent that it takes on the force of the law"; nor are they sufficient to show the County's awareness of any such practice. *See Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally, random acts or isolated incidents are insufficient to establish a custom or policy.") (citation omitted).

Even assuming Plaintiff established the County had a custom of requiring inmates to sleep on a mat on the floor, he has not alleged the injuries he purportedly experienced were a known or obvious consequence of such a custom. *See Brown*, 520 U.S. at 410 ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Plaintiff's allegations do not demonstrate how it would be obvious to the County that requiring an inmate to sleep on a mat on the floor—as opposed to, for example, a mat on a steel bunk—would lead to the injuries Plaintiff allegedly suffered.

Finally, with respect to his medical care claim, Plaintiff has not identified any policy or custom which influenced the treatment decisions of medical personnel at

Case No. 3:22cv7595-LC-HTC

the Jail. He does not describe the medical treatment any other inmate received, and "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cty, Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011). Nothing suggests the care Plaintiff received was the result of anything other than the personnel's independent medical judgment.

Based on the foregoing, the County's motion to dismiss should be granted, as Plaintiff's complaint does not allege the County had a policy or custom which caused a violation of his constitutional rights.

Accordingly, it is RECOMMENDED:

1. That Defendant Escambia County's motion to dismiss for failure to state a claim, ECF Doc. 33, be GRANTED, and Plaintiff's claims be DISMISSED WITH PREJUDICE.

2. That Defendant Escambia County's motion to dismiss as a sanction, ECF Doc. 42, be DENIED AS MOOT.

3. That Plaintiff's motion to appoint counsel, ECF Doc. 49, be DENIED AS MOOT.

4. That the clerk close the file.

At Pensacola, Florida, this 2nd day of June, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.